UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

RECEIVED USDC
CLERK, CHARLESTON, SC
2023 APR 10 PM 1:20

| | |
|---|---|
| Jay Connor,<br><br>Plaintiff,<br><br>Vs.<br><br>First Choice Media LLC, Joe Mclendon Individually, Prevent RX 2, LLC and Edwin Rodriguez Individually<br><br>Defendants. | C/A No: 2:23-cv-1452-JD-MGB<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff complaining of the Defendants alleges as follows:

## TYPE OF ACTION

1. This is an action to recover statutory damages imposed by 47 U.S.C. § 227, and trebled damages constituting forfeiture or other penalty and S.C. Code Section § 37-21.

## PARTIES

2. Plaintiff is a resident of Charleston County, South Carolina.

3. The calls alleged in this complaint were made to Plaintiff's wireless phone line in South Carolina.

4. Defendant FIRST CHOICE MEDIA, LLC. ("First Choice") is a lead provider for companies distributing covid and genetic testing kits to Medicare recipients.

5. First Choice's offices are located on 7300 North Federal Highway, Boca Raton, FL 33487.

6. First Choice either directly or by those on its behalf, makes calls to residents of South Carolina.

1

7. First Choice conducts and transacts business in South Carolina.

8. Defendant JOE MCLENDON ("Mclendon") is an individual who is a resident of Florida.

9. Defendant PREVENT RX 2, LLC ("Prevent RX 2") distributes covid testing kits to Medicare recipients.

10. Prevent RX 2's offices are located on 906 West Sunrise Boulevard, Fort Lauderdale, FL 33487.

11. Prevent RX 2 either directly or by those on its behalf, makes calls to residents of South Carolina.

12. Prevent RX 2 conducts and transacts business in South Carolina.

13. Prevent RX 2 distributes covid testing kits to the leads generated by First Choice and Mclendon, then bills Medicare for the kits.

14. Defendant EDWIN RODRIGUEZ ("Rodriguez") is an individual who is a resident of Florida.

## VENUE AND JURISDICTION

15. This cause of action arises out of conduct of Defendants initiating telephone calls to Plaintiff's wireless telephone number in Charleston County South Carolina.

16. Plaintiff is a resident of Charleston County.

17. Pursuant to *Mims v. Arrow Fin. Services. LLC 565* U.S. 368, 372 (2012), this court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under the South Carolina Telephone Privacy

Protection Act, S.C. Code Section 37-21, because the state claims arise from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and add little complexity to the case. Furthermore, pursuant to Section 37-21-100, "Nothing in this chapter must be construed to limit any remedies, causes of action, or penalties available to a person or governmental agency under another federal or state law."

### The Telephone Consumer Protection Act

18. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

19. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a

3

telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')...Private suits can seek either monetary or injunctive relief. *Id*...This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

20. The TCPA provides a private right of action under section 47 U.S.C § 227 (c)(5) for a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under the subsection.

## **The South Carolina Telephone Privacy Protection Act**

21. On May 18, 2018, the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10, et seq.

22. The SCTPPA requires that "at the outset of a telephone solicitation, a telephone solicitor shall provide…the name of the person on whose behalf the telephone solicitation is being made." 37-21-40(A).

23. The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to a South Carolina telephone number that has been listed on the National Do Not Call Registry. *See* S.C. Code § 37-21-70.

4

## Factual Allegations

24. The telemarketing campaign alleged herein included placing multiple anonymous, unsolicited calls to Plaintiff's number. The call representatives falsely purported themselves to be with the National Do Not Call Registry or affiliated with the National Do Not Call Registry. The reps informed Plaintiff that as a condition of being placed on the Do Not Call Registry, he must participate in a recorded call consenting to receive shipments of covid 19 testing kits or genetic testing kits. When Plaintiff refused, they threatened he would continue to receive unwanted telemarketing calls.

25. Defendant Prevent RX 2 LLC is a Medicare-approved company that distributed covid testing kits at the time of the alleged calls.

26. Prevent RX billed Medicare patients through their Medicare accounts and supplemental insurance for covid testing kits.

27. Defendant Edwin Rodriguez is an owner of Prevent RX 2.

28. Upon information and belief, Rodriguez had personal knowledge of the calls alleged herein, approved of the telemarketing campaign that included the calls alleged herein, or by failure to act, allowed such calls to be made.

29. Defendant First Choice Media LLC is a company that directly, or by those on its behalf, makes telephone calls to telephone numbers on the National Do Not Registry.

30. Defendant Joe Mclendon is an owner of First Choice Media.

31. Upon information and belief, Mclendon participated in the calls alleged herein, had personal knowledge of the calls, or by failure to act, allowed such calls to be made.

Personal Liability Under the TCPA

32. Defendant Edwin Rodriquez personally participated in the actions complained of by: (a) envisioning, authorizing, supervising, controlling, and directing the marketing conduct described herein, including the telephone conduct; (b) verifying and drafting the scripting that would be used on the calls; (c) leading supervising, and ensuring (non) compliance with Prevent RX 2's legal and regulatory obligations, including the TCPA.

33. Defendant Mclendon personally participated in the actions complained of by: (a) envisioning, authorizing, supervising, controlling, and directing the marketing conduct described herein, including the telephone conduct; (b) personally selecting the vendor that First Choice used to dial phone numbers and telemarketing; (c) verifying and potentially drafting the scripting that would be used on the calls; (d) selecting the dialing equipment, telephone services, manpower, and suppliers of the same used to make the calls; (e) personally setting up accounts and telephone services for making the calls (f) leading supervising, and ensuring (non) compliance with First Choice's legal and regulatory obligations, including the TCPA.

Telephone calls to Plaintiff

34. Plaintiff Connor is a "person" as defined by 47 U.S.C. § 153(39).

35. Plaintiff is sole subscriber to the wireless telephone number (843) 557-XXXX.

36. Plaintiff's number (843) 557-XXXX has been on the National Do Not Call Registry since 2009.

37. Prior to the calls alleged herein, Plaintiff had never heard of, or requested calls from Prevent RX 2 or First Choice Media.

6

38. On 8/22/22, Plaintiff received a call ("First Call") by or on behalf of the Defendants.

39. The First Call transmitted the caller ID (516) 508-7093, a non-working number.

40. The First Call purpose of the call was to deliver a telephone solicitation.

41. The First Call began with a long pause, indicating the use of an automatic telephone dialing system ("ATDS").

42. During the First Call, the caller identified himself as "Peter" with the "National Do Not Call Registry".

43. In the First Call, Plaintiff instructed the caller to not call him again.

44. On 8/23/22, Plaintiff received a call ("Second Call") by or on behalf of the Defendants.

45. The Second Call transmitted the caller ID (626) 239-9428, a non-working number.

46. The purpose of the Second Call was to deliver a telephone solicitation.

47. During the Second Call, the caller identified himself as "Daniel" with the "National Do Not Call Registry".

48. Daniel encouraged Plaintiff to participate in a call recording for a testing kit for his number to be placed on the Do Not Call Registry.

49. Plaintiff refused to cooperate with Daniel, and he hung up.

50. On 8/26/22, Plaintiff received a call ("Third Call") by or on behalf of the Defendants.

51. The Third Call transmitted the caller ID (405) 233-8887.

52. The purpose of the Third Call was to deliver a telephone solicitation.

53. During the Third Call, the caller identified himself as "Sam Peterson" with "Clinical Genetics", a non-existent company.

54. Peterson informed Plaintiff that in order to place his number on the National Do Not Call List, he must participate in a recorded call agreeing to receive Covid 19 testing kits.

55. Despite Plaintiff's previous Do Not Call request, and that his number was already on the National Do Not Call Registry, Plaintiff consented to receive testing kits to identify the source of the harassing phone calls.

56. On 8/29/22, Plaintiff received a call ("Fourth Call") by or on behalf of the Defendants.

57. The Fourth Call transmitted the caller ID (920) 365-3568.

58. The purpose of the Fourth Call was to deliver a telephone solicitation.

59. The Fourth Call was made by or on behalf of the Defendants.

60. During the Fourth Call, the caller informed Plaintiff that he must cooperate with him to have his number added to the National Do Not Call List.

61. When Plaintiff told him to hurry up with the sales pitch, and resisted providing consent for shipment of testing kits, the representative replied:

> "F*** you son of a b***. You will keep getting these calls every day, hundred times until the day you die."

> "Oh, seriously, you will keep getting these calls until you die. I will call you hundred times."

62. Indeed, Plaintiff received five (5) additional telephone solicitation calls from the same representative within the next eight minutes harassing him.

8

63. Plaintiff identified Defendant Prevent RX 2 through the billing record for the covid tests.

64. Defendant Rodriguez, owner of Prevent RX 2, informed Plaintiff of the First Choice telemarketing campaign that included calls for covid 19 testing kits.

65. Specifically, Rodriguez acknowledged the Third Call was made on behalf of First Choice and Prevent RX 2, and the Third Call resulted in the shipment of covid testing kits.

66. Rodriguez personally provided scripts for First Choice and Mclendon to use in the telemarketing campaign that included the calls alleged herein.

## CAUSES OF ACTION
### Count One:
### Violations of the TCPA's Implementing Regulations
### Codified at 47 C.F.R. § 64.1200

67. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

68. By placing at least nine (9) telemarketing calls to the Plaintiff whose number is on the Do-Not-Call Registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on their Do-Not-Call list, Defendants jointly and severally, violated 47 U.S.C. § 227 (c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

69. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(c), and Plaintiff is entitled to an award of $500 - $1,500 in damages for each and every call and violation made to his telephone number in

violation of the TCPA's implementing regulations codified at 47 C.F.R.§64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

## Count Two:

## Violations of the SCTPPA

70. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

71. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the SCTPPA, including: (a) initiating a call to a telephone number on the federal Do Not Call Registry (b) the failure to "shall provide, in a clear and conspicuous manner, a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made".

72. The Defendants' violations were negligent and/or knowing.

73. The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA as well as attorneys' fees and costs. S.C. Code § 37-21-80.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief, temporarily and permanently:

- For the statutory damages of $500 to $1,500 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the TCPA;

- For the statutory damages of $1,000 to $5,000 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the SCTPPA;

- For an award of attorneys' fees pursuant to the SCTPPA;

- For unspecified punitive damages in an amount to be determined by the jury.

                                                                                       Respectfully Submitted,

                                                                                       */s/ Jay C. Connor*

                                                                                      Jay Connor Plaintiff, *Pro Se*
                                                                                      215 East Bay Street 201-F
                                                                                      Charleston, SC 29401
                                                                                      Jayc650@hush.com
                                                                                      (843) 557-5724
                                                                                      (843) 913-8357 (Fax)

April 10, 2023